UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| DECORIAN P. R.,[1] | : | Case No. 1:22-cv-657 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Decorian P. R. brings this case before the Court challenging the Social Security Administration's denial of his application for Supplemental Security Income. This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

**I.     Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits in July 2020, alleging disability due to several impairments, including two slipped discs in his back, a pinched nerve in his back, type 2 diabetes, and high blood pressure. (Doc. #6-6, *PageID* #246). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Christopher S. Tindale. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since July 17, 2020, the application date. |
| Step 2: | He has the following severe impairments: disorders of the back, diabetes mellitus, obesity, and mood disorder. |
| Step 3: | He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work… except that he is further limited to occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently kneeling and crouching; occasionally stooping or crawling; avoiding all exposure to dangerous hazards such as unprotected heights; performing simple, routine, and repetitive tasks with no high pace or high production quotas; and maintaining superficial social interactions, with superficial defined as no tandem tasks, no arbitration, no conflict resolution, no persuasion, and no customer service duties." |
| | He is unable to perform his past relevant work. |

> Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #6-2, *PageID* #s 48-59). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since July 17, 2020, the date the application was filed. *Id.* at 60.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 46-60), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." Bowen, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

Plaintiff argues that the ALJ's residual functional capacity (RFC) determination is unsupported by substantial evidence as he failed to properly evaluate the medical source opinions of record. (Doc. #8, *PageID* #s 1306-10). Further, Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's ability to stand/walk, walk without a cane, and work without missing multiple days per month. *Id*. at 1310-12. The Commissioner maintains that substantial evidence, including the treatment record, Plaintiff's reported activity level, and the prior administrative findings of the state agency medical consultants, supports the ALJ's RFC finding. (Doc. #9, *PageID* #s 1318-30).

Since Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to

4

"defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set

5

forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

Here, Plaintiff asserts that the ALJ erred in his assessment of the medical opinions of David Bradford, D.C., James Donovan, M.D., and Bruce Siegel, D.O. (Doc. #8, *PageID* #s 1307-10).

*Dr. Bradford's Medical Opinion*

On September 21, 2021, Dr. Bradford completed a medical source statement in which he opined that Plaintiff was limited to lifting ten pounds, no standing or walking during an eight-hour workday with the need for a cane to walk, and sitting for only one hour in an eight-hour workday with the ability to shift positions at will. (Doc. #6-15, *PageID* #s 1276-80). Plaintiff would have limitations in stooping, balancing, reaching, and handling, as well as environmental restrictions. *Id.* at 1278-79. Every thirty to sixty minutes, Plaintiff would need to take an unscheduled break at work. *Id.* at 1280. Dr. Bradford estimated that Plaintiff would miss more than four days per month of work due to his impairments. *Id.* at 1282. Further, Dr. Bradford opined that Plaintiff's pain would constantly interfere with his attention and concentration. *Id.*

The ALJ found Dr. Bradford's opinion "not persuasive," concluding that the record does not support "such extreme restrictions." (Doc. #6-2, *PageID* #55). Specifically, the ALJ explained that the serial clinical examinations in the record did not show gait deficits supporting an inability

6

to stand and walk for up to six hours in a workday, or an inability to lift and/or carry twenty pounds occasionally or ten pounds frequently. *Id*. Additionally, the ALJ noted that within twelve months of the motor vehicle accident, Plaintiff reported a pain level of only 2-3/10 and was dismissed from chiropractic care due to improvement. *Id.* Further, the ALJ found that Plaintiff did not follow through with conservative care, and initially declined the offer of surgical intervention. *Id.* Finally, the ALJ observed that there were no repeat findings of lower extremity swelling supporting the need for leg elevation, and the repeated normal findings, including a normal gait, undermine the opined medical necessity of a cane. *Id.* at 55-56.

*Dr. Donovan's Medical Opinion*

On October 7, 2021, Dr. Donovan, who had treated Plaintiff for seven years, completed a medical source statement in which he opined that Plaintiff was limited to lifting twenty pounds occasionally and ten pounds frequently, only standing and walking one to two hours in an eight-hour workday with a need for a cane to walk, and sitting for seven to eight hours in a workday with the ability to shift positions at will, in increments not to exceed one to two hours. (Doc. #6-15, *PageID* #s 1284, 1287-88). Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, and he would have limitations in reaching, pushing, or pulling, as well as environmental restrictions. *Id*. at 1285-86. However, Dr. Donovan opined that Plaintiff had no limitations in repetitive reaching, handling, or fingering and did not require leg elevation when sitting. *Id*. at 1285, 1287. Once or twice a day, Plaintiff would need to take an unscheduled break at work. *Id*. at 1288. Dr. Donovan estimated that Plaintiff would miss about two days of work per month due

to his impairments. *Id.* at 1289. Further, Dr. Donovan opined that pain would often interfere with Plaintiff's attention and concentration. *Id*. at 1284.

The ALJ found Dr. Donovan's opinion to be only "somewhat persuasive." (Doc. #6-2, *PageID* #57). The ALJ explained that, although Dr. Donovan's opinion was not as extreme as Dr. Bradford and Dr. Siegel's assessments, the longitudinal record did not support an inability to perform postural maneuvers, and most records did not note any cane use. *Id.* In addition, the ALJ noted that there was no support, other than subjective allegations, for the need for multiple absences from work per month. *Id.*

*Dr. Siegel's Medical Opinion*

On September 7, 2021, Plaintiff presented to Dr. Siegel for an independent medical evaluation. (Doc. #6-15, *PageID* #s 1269-75). On examination, Plaintiff exhibited loss of lumbar lordosis, limited lumbar range of motion, absent deep tendon reflexes, diminished sensation in both feet, muscle guarding, atrophy, and weakness in his lower extremities. *Id*. at 1270-73. When discussing his functional limitations, Dr. Siegel opined that Plaintiff was limited to lifting less than ten pounds and to one hour of sitting and two hours of standing or walking during an eight-hour workday. *Id*. at 1273. Plaintiff could never climb, balance, stoop, crouch, kneel or crawl, and he would have limitations in reaching, pushing, or pulling, as well as environmental restrictions. *Id*. at 1271-72. Further, Dr. Siegel opined that Plaintiff did not require an ambulatory aid or an assistive device. *Id*. at 1273. However, Plaintiff would always require leg elevation when sitting. *Id*. Every two hours, Plaintiff would need to take an unscheduled break at work. *Id*. at 1274. Dr. Siegel estimated that Plaintiff would miss more than four days of work per month due to his

impairments. *Id*. at 1275. In addition, Dr. Siegel opined that Plaintiff's pain would frequently interfere with his attention and concentration. *Id*. at 1270. Finally, Dr. Siegel reiterated his findings in a follow-up letter to Plaintiff's counsel. (Doc. #6-8, *PageID* #s 861-64).

The ALJ found Dr. Siegel's opinion "not persuasive," determining that his opinion and follow-up letter reiterating his findings are "extreme and not consistent with the record." (Doc. #6-2, *PageID* #56). The ALJ explained that the "longitudinal record shows no significant issues with hands for reaching overhead in [the] record. Similar[ly], while the spinal condition supports a limitation to light exertional lifting and carrying and occasional postural restrictions, Dr. Siegel opined that [Plaintiff] could not perform any postural maneuvers and was only able to lift 10 pounds. Such findings are not consistent with the more recent clinical findings after a period of recovery following the April 2020 accident." *Id.* Finally, the ALJ determined that Dr. Siegel's findings all stem from a single evaluation, and as such, "were apparently reliant on Plaintiff's unsupported subjective complaints." *Id.*

*State Agency Medical Consultants' Medical Opinions*

In September 2020, after reviewing Plaintiff's records, Leon Hughes, M.D., state agency physician, opined that Plaintiff retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently balance, kneel, or crouch; and occasionally stoop, crawl, or climb ramps and stairs. (Doc. #6-3, *PageID* #s 116-17). Plaintiff should never climb ladders, ropes, or scaffolds, and he should avoid all exposure to unprotected heights. *Id*.

9

In April 2021, upon reconsideration, Steve McKee, M.D., state agency physician, reviewed Plaintiff's records and affirmed Dr. Hughes's assessment. *Id*. at 127-28.

The ALJ found these assessments "persuasive," determining that the opinions were supported by and consistent with the medical evidence of record. (Doc. #6-2, *PageID* #56). The ALJ noted that they provided detailed summaries of the evidence they reviewed when formulating their opinions. *Id*. Furthermore, the ALJ recognized that Dr. Hughes and Dr. McKee were medical experts familiar with the Social Security Administration's rules and regulations. *Id*.

As noted above, Plaintiff contends that the ALJ erred in his assessment of Dr. Bradford's, Dr. Donovan's, and Dr. Siegel's medical opinions.[2] (Doc. #8, *PageID* #s 1307-10). Specifically, he points out that the ALJ failed to consider these opinions' consistency with both each other and the late 2021 medical records. *Id*. at 1308-09.

Plaintiff's argument is well taken. In finding Dr. Bradford's opinion "not persuasive[,]" the ALJ failed to explain how he considered the consistency factor. While the ALJ assessed the supportability factor through references to the record of clinical examinations failing to support some of Dr. Bradford's opinion, there is no reference to the consistency factor in the ALJ's assessment. The plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how he considered the supportability and consistency factors for a medical source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 416.920c(b)(2)

---

[2] Plaintiff appears to rely, in part, on the treating physician rule. However, because Plaintiff filed his application after March 27, 2017, the new regulations apply, and, therefore, the treating physician rule is not applicable.

10

("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether he needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth his rationale on what are deemed to be the two most important factors—supportability and consistency. *See id*. In this case, the ALJ did not explain how he considered the consistency factor in assessing Dr. Bradford's medical opinion, as the regulations required him to do.

The Commissioner argues that the ALJ did not err because, "regardless of whether the ALJ used the magic words of 'consistency' or 'supportability,' if the ALJ's decision, when read as a whole, shows that he substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed." (Doc. #9, *PageID* #1326) (citing *Hill v. Comm'r of Soc. Sec.*, 560 App'x 547, 551 (6th Cir. 2014)). However, the Commissioner's reliance on *Hill* is "inapplicable because [it] applied the prior regulations for evaluating opinion evidence, which did not expressly require ALJs to explain their consideration of the supportability and consistency factors. By contrast, the new regulations that apply in this case do impose such a requirement." *See John F. v. Comm'r of Soc. Sec.*, 2023 WL 4759127, at *5; 20 C.F.R. § 416.920c(b)(2).

Furthermore, the Commissioner's *post hoc* rationalization of how the ALJ could have applied the factors to Dr. Bradford's medical opinion based on a review of the ALJ's decision as a whole does not cure this deficiency. The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered his decision and "imagine manifold ways in which the factors could have been applied to the evidence that was presented."

11

*Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Instead, it is the obligation of the ALJ "in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id*. As such, by not explaining how he considered the factor of consistency when evaluating Dr. Bradford's medical opinion, the ALJ failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

Similarly, in finding Dr. Donovan's opinion "only somewhat persuasive[,]" the ALJ failed to explain how he considered the consistency factor. The ALJ addressed the supportability factor, finding that the record did not support Dr. Donovan's opinion regarding "an inability to perform postural maneuvers[,]" the need for a cane, or multiple absences from work a month. (Doc. #6-2, *PageID* #57). However, the ALJ does not include any mention or analysis of the consistency factor. As stated above, the regulations require an ALJ to make a consistency factor assessment for every medical opinion in the record, which he failed to do. 20 C.F.R. § 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find *all* of the medical opinions ... in your case record[.]") (emphasis added).

Notably, the ALJ's failure to address the consistency factor in his analysis of Dr. Bradford's and Dr. Donovan's opinions is significant considering both the internal consistency of Dr. Bradford's, Dr. Donovan's, and Dr. Siegel's opinions and their opinions' consistency with the objective medical evidence during their examination timeline. All three physicians agree that Plaintiff would miss multiple days of work in a month, would need unscheduled breaks in the

12

workday, would be limited in sitting, standing, and walking during an eight-hour workday, and would have limitations in stooping, balancing, reaching, and handling, as well as environmental restrictions. (Doc. #6-15, *PageID* #s 1269-89). These similarities indicate an internal consistency within all medical opinions from September through October 2021 that the ALJ failed to acknowledge in his decision.

Additionally, all the objective medical evidence from September through October 2021 accords with Dr. Bradford's, Dr. Donovan's, and Dr. Siegel's medical opinions. For example, Dr. Siegel's September 7, 2021 assessment details "loss of lumbar motion, muscle guarding, and limited lumbar motion." (Doc. #6-15, *PageID* #1270). This is consistent with the Mayfield Clinic's physical therapy evaluation from a few days later that describes Plaintiff's gait as "antalgic" with "abnormal velocity, uneven step length[,]" lower lumbar strength tests, all accompanied by pain, a functional limitation of 10 minutes walking before onset of 6/10 pain, and mechanical traction due to "[muscle] spasms, LE T/N, and/or significant debilitating pain." (Doc. #6-15, *PageID* #s 1290-93). Likewise, the day before Plaintiff visited Dr. Bradford, the Mayfield Clinic's physical therapy evaluation documents Plaintiff having "sharp pain across [his] lower back[,] [o]nly has decreased pain while at physical therapy but pain returns quickly after." (Doc. #6-15, *PageID* #1295). Dr. Bradford's September 21, 2021 assessment is consistent with the physical therapy evaluation, noting that Plaintiff's lumbar herniated disc led to an "inability to stand, sit, or walk for extended periods of time" and decreased function. (Doc. #6-15, *PageID* #1279). Finally, Dr. Donovan's October 7, 2021 assessment indicates that Plaintiff has "chronic low back pain with current symptoms" and that Plaintiff's impairments are likely to produce good

13

and bad days. (Doc. #6-15, *PageID* #1288). The Mayfield Clinic's physical therapy evaluation from the following day is consistent with Dr. Donovan's assessment; in addition to another round of mechanical traction to the lumbar region due to "[muscle] spasms, LE T/N, and/or significant debilitating pain[,]" the Mayfield Clinic's evaluation notes that "Patient continues to have 'good and bad days.' Sharp pain occasionally presents across lower back." (Doc. #6-15, *PageID* #1298). In summation, the objective medical evidence is consistent with the three physicians' medical opinions. However, the ALJ failed to acknowledge this consistency in his decision.

In failing to address the consistency factor when assessing Dr. Bradford's and Dr. Donovan's medical opinions, the ALJ has left unclear whether he considered the consistency of the three medical opinions and the concurrent medical record. Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze these medical opinions in accordance with 20 C.F.R. § 416.920c(b)(2). For these reasons, Plaintiff's Statement of Errors is well taken.[3]

### IV. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.

March 18, 2024                                              *s/Peter B. Silvain, Jr.*
                                                            Peter B. Silvain, Jr.
                                                            United States Magistrate Judge